## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY CRUSE, | ◊ | |
| | ◊ | |
| Plaintiff, | ◊ | |
| | ◊ | |
| vs. | ◊ | No. 04-1341-T-An |
| | ◊ | |
| COMMISSIONER OF SOCIAL | ◊ | |
| SECURITY, | ◊ | |
| | ◊ | |
| Defendant. | ◊ | |
| | ◊ | |

## ORDER AFFIRMING DECISION OF THE COMMISSIONER

Plaintiff Kimberly Cruse filed this action to obtain judicial review of Defendant Commissioner's final decision denying her applications for benefits under the Social Security Act ("Act"), 42 U.S.C. §§ 401 *et seq.* and §§ 1381 *et seq.* Plaintiff's applications were filed on February 11, 2002, with October 15, 2001, as the alleged date of the onset of her disability. The applications and the request for reconsideration were denied. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on October 6, 2003. On December 11, 2003, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The appeals council affirmed the ALJ's decision. This decision became the Commissioner's final decision.

On December 27, 2004, Plaintiff filed this action, requesting reversal of the Commissioner's decision. Summonses were issued on that same date. On August 30, 2005,

Plaintiff was ordered to provide to the court an explanation as to why Defendant had not been served with process and to show cause why the action should not be dismissed.  Plaintiff filed her response on September 2, 2005.  On September 9, 2005, the court entered an order allowing Plaintiff additional time in which to effectuate service of process.  Process has now been served, the Commissioner has filed an answer, and the parties have fully briefed the court.  For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party.  "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Id.  The court's review is limited to determining whether or not there is substantial evidence to support the Commissioner's decision, 42 U.S.C. § 405(g); Drummond v. Commissioner, 126 F.3d 837, 840 (6th Cir. 1997), and whether the correct legal standards were applied.  Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986).  When the record contains substantial evidence to support the Commissioner's decision, the decision must be affirmed.  Stanley v. Secretary, 39 F.3d 115, 117 (6th Cir. 1994) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  When substantial evidence supports the Commissioner's

determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. Felisky v. Bowen, 35 F.3d 1027,1035 (6th Cir. 1994).

Plaintiff was twenty-two years old on the date of the hearing. R. at 539. She attended Jackson State Community College for one year. R. at 540-41. Prior to the alleged onset date of her disability, Plaintiff worked as a produce clerk, cashier, and greeter. R. at 541. Plaintiff stated in her applications for benefits that her disability is due to dizziness, inability to stand without falling, migraines, and chronic vertigo. R. at 536-79.

In his decision, the ALJ enumerated the following findings: (1) Plaintiff meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Act and is insured for benefits through June 30, 2003, but not thereafter; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability; (3) Plaintiff has an impairment or combination of impairments (conversion disorder and asthma) considered "severe" based on the requirements in the Regulations, 20 C.F.R. § 404.1520(b), but she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4; (4) Plaintiff's allegations regarding her limitations were not fully credible; (5) Plaintiff has the residual functional capacity to lift and carry up to twenty pounds occasionally and ten pounds frequently and stand, sit, or walk up to six hours in an eight hour day; she should avoid pulmonary irritants such as dust, fumes, gases, odors, chemicals; (6) Plaintiff's mental capacity for work activities is limited only by occasional lapses in concentration; (7) Plaintiff's past relevant work does not require the performance of work-related activities

3

precluded by her residual functional capacity; (8) Plaintiff's conversion disorder and asthma do not prevent her from performing her past relevant work; (9) Plaintiff was not under a "disability" as defined in the Act at any time through the date of this decision, 20 C.F.R. §§ 404.1520(f) and 416.920(f).

The Social Security Act defines disability as the inability to engage in substantial gainful activity.  42 U.S.C. § 423(d)(1).  The claimant bears the ultimate burden of establishing an entitlement to benefits.  20 C.F.R. § 404.1512(a); Born v. Secretary, 923 F.2d 1168, 1173 (6th Cir. 1990).  The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.  Id.

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he has done in the past will not be found to be disabled.

5. If an individual cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Wyatt v. Secretary, 974 F.2d 680, 683-84 (6th Cir. 1992).  Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.  20 C.F.R. § 404.1520(a).  Here, the sequential analysis proceeded to the fourth step.  The ALJ found that Plaintiff could perform her past relevant work.

Plaintiff argues that the Commissioner erred in finding that Plaintiff's testimony was not fully credible and by not giving proper weight to the medical evidence in the record. Plaintiff also argues that substantial evidence does not support the Commissioner's decision.[1]

The medical evidence in the record is as follows.[2] Plaintiff began experiencing dizziness in 2001.  Subsequently, Plaintiff was examined by several doctors, including Drs. Payne, Gray, Spruill, Davis, Wainscott, Gardner, and Mahajan.  R. at 176, 181-83, 188-90, 196, 272. All of these doctors found that Plaintiff was neurologically intact; testing was generally normal and did not provide an explanation for Plaintiff's dizziness.  R. at 162,174, 175, 182-83, 188-90, 196, 272.  On October 31, 2001, Plaintiff was admitted to Jackson-Madison General Hospital due to continued dizziness.  R. at 181. She was released the next day, and Dr. Kevin Gray noted that, with medication, Plaintiff showed marked

---

1   Plaintiff has filed a twenty-five page brief in violation of the twenty page limitation set forth in Local Rule 7.2(e).  Plaintiff's counsel is advised, as he has previously been advised, that future briefs violating this Local Rule may be stricken unless permission has been granted to exceed the page limitation.

2   Plaintiff has applied for benefits under Title II, which requires that she prove that she was disabled while she was insured. See 20 C.F.R. § 404.101(a); see also Moon v. Sullivan, 923 F.2d 1175, 1182 (6th Cir. 1990). Plaintiff's insured status expired on June 30, 2003. Therefore, consideration of her condition is limited to her condition prior to June 30, 2003. See Henley v. Commissioner, 58 F.3d 210, 213 (6th Cir. 1995).

improvement and was fairly asymptomatic.  R. at 182. On December 26, 2001, Dr. Natasha Mahajan, Plaintiff's primary treating physician, reported that Plaintiff was not taking any medication and that her neurological examination was negative.  R. at 272.

On February 14, 2002, according to Dr. Anne O'Duffy, a neurologist, Plaintiff's MRI, laboratory studies, and strength were normal but she had some "give way" weakness in the lower extremities when standing.  R. at 218. Plaintiff's gait was markedly abnormal with swaying and grabbing onto various objects in an attempt to maintain her balance.  R. at 218. Dr. O'Duffy opined that Plaintiff probably had a conversion disorder as there was no neurological reason for her symptoms.[3] R. at 218. Dr. O'Duffy advised Plaintiff to undergo a psychiatric evaluation and physical therapy.  R. at 218.

On May 21, 2002, Dr. Renga Vasu, a neurologist, reported that Plaintiff had difficulty standing up and could not balance even with two people holding her.  R. at 225. She assessed brainstem migraines, somatization, ruled out conversion disorder, and referred Plaintiff to Charter Lakeside Behavior Center. R. at 225.

Plaintiff was treated by Christine Hasselle, a family nurse practitioner, from June 13, 2002, to August 29, 2002.  R. at 258-63.  Ms. Hasselle reported that Plaintiff was coherent with a guarded attitude, an appropriate affect, adequate judgment, intact memory, and no perceptual abnormalities.  R. at 258, 260.  Ms. Hasselle assessed a conversion disorder and an anxiety disorder, non-specific.  R. at 260. She found Plaintiff's prognosis to be good.  R.

---

3  Conversion disorder is a psychiatric condition in which emotional distress or unconscious conflict are expressed through physical symptoms.  See www.medicineonline.com/references/Mental_Health.

at 260. On October 15, 2002, Ms. Hasselle noted that Plaintiff was being treated with therapy and medication management but was unable to return to work at that time.   R. at 231.

From August through November 2002, Dr. Shankar Natrajan, a pediatric neurologist, reported that Plaintiff had normal MRI and CT scans and that her physical and neurological examinations remained unremarkable.  R. at 484-86.  She could move her legs easily when sitting in a wheelchair but remained wheelchair bound because her legs became "wobbly" when she attempted to stand.  R. at 484-85. Dr. Natarajan advised Plaintiff not to return to work until her dizziness and migraines were under control.  R. at 230.

Plaintiff obtained psychological treatment from Dr. Martha Gordon from December 26, 2002, through June 3, 2003.  R. at  239-44. On January 11, 2003, Dr Gordon assessed Plaintiff's mental capacity for work activity and found that Plaintiff's cognitive work-related limitations were fair to poor in all categories.  R. at 232-33. Dr. Gordon indicated that Plaintiff was unable to work because of an inability to stand or walk, dizziness, dissociative episodes, depression, anxiety, and panic.  R. at 233. She found that Plaintiff had a decreased memory and ability to sustain concentration.  R. at 233.

Plaintiff was hospitalized for two weeks during April 2003 for intensive physical therapy during which she progressed to walking with the assistance of a rolling walker.  R. at 406. Dr. Davidson Curwen, a rehabilitation specialist, stated on Plaintiff's discharge form that Plaintiff was medically stable and doing better overall and that her functional mobility, endurance, and strength had significantly improved.  R. at 448.  Dr. Curwen noted that, although Plaintiff used a rolling walker, Plaintiff stated that she did not always need it and

hoped to get rid of it entirely within the next few weeks. R. at 448. Upon discharge, Plaintiff was independent in her self-care, and her overall strength had improved. R. at 406, 448. Dr. Curwen opined that Plaintiff would be totally independent and able to resume all aspects of her life in six to eight weeks. R. at 448.

After a psychiatric diagnostic interview on April 10, 2003, Kelly Blair, Psy.D., noted that all clinical diagnostic and laboratory studies were negative. R. at 420. Dr. Blair found that Plaintiff was alert, cooperative, pleasant, well-oriented, and exhibited appropriate behavior. R. at 416-17, 421. Despite Plaintiff's assertion that she could not "retain anything," she demonstrated adequate recall of both recent and remote events, while displaying a relevant and organized train of thought. R. at 416, 421. Dr. Blair opined that Plaintiff did not appear to experience significant depression or emotional instability. R. at 416, 421. Subsequent progress notes show that Plaintiff's performance on neurocognitive evaluations was adequate, reflecting sufficient simple and complex auditory attention. R. at 413. Plaintiff was able to follow three-step verbal and one-step written commands. R. at 416. A personality assessment inventory showed significant elevation on items measuring concerns about somatic events. R. at 413. Dr. Blair stated that her findings were consistent with a conversion disorder and probable passive aggressive personality features. R. at 414.

On June 3, 2003, Dr. Gordon found Plaintiff to be calm, cooperative, neat, appropriate, clear, and goal-directed. R. at 239. She observed that Plaintiff's thought content, perception, insight and judgment were within normal limits, but Plaintiff continued to have some dissociative symptoms. R. at 239.

Dr. Robert Kennon conducted a psychological evaluation of Plaintiff in September 2003. R. at 488. He noted that her stream of thought was logical, clear, and coherent. R. at 491. Dr. Kennon found that Plaintiff had a conversion disorder with mixed presentation of motor and sensory symptoms or deficits and a personality disorder, non-specific, with predominant masochistic traits. R. at 494. He found that Plaintiff's psychological difficulties were at the root of her neurological, somatic, and motor deficits. R. at 494. According to Dr. Kennon, Plaintiff was capable of managing her own funds. R. at 491.

On September 23, 2003, the intake clinician at Pathways reported that Plaintiff was neat, casual, coherent, and restless, with fair judgment, poor insight, an appropriate mood and affect, adequate impulse control, poor memory, poor concentration/attention, good eye contact, and a normal, organized, and non-psychotic thought process. R. at 506. The clinician observed that Plaintiff was adequately able to express her needs, had good verbal skills, and was independent in her activities of daily living. R. at 506. Plaintiff reported that she read, shopped, and spent time with friends. R. at 504. Plaintiff was diagnosed with a conversion disorder and dissociative amnesia. R. at 507.

After evaluating all the evidence in the record, the ALJ determined that Plaintiff had a conversion disorder and asthma. However, she did not have an impairment or combination of impairments that either met or equaled those listed in 20 C.F.R. Part 404, Subpt. P, App. 1, the Listing of Impairments. The ALJ determined that Plaintiff had the residual functional capacity to perform light work although her mental capacity for work activity was limited by occasional lapses in concentration. Plaintiff's residual functional capacity did not prevent

Plaintiff from performing her past relevant work as a cashier and greeter. Therefore, Plaintiff

was not disabled as defined in the Act.

Plaintiff asserts that her impairment should be determined to meet or equal the

requirements of Listing § 12.07 of 20 C.F.R. pt. 404, subpt. P, app. 1. The burden of proof

at the Listing level of the sequential evaluation is on Plaintiff. For a claimant to show that her

impairment matches a listing, the impairment must meet all specified medical criteria. See

Zebley v. Sullivan, 493 U.S. 521, 530 (1990). Plaintiff has not met her burden to prove that

her impairments meet or equal the criteria of any listed impairment.

Listing § 12.07 states:

*Somatoform Disorders*: Physical symptoms for which there are no demonstrable organic
findings or know physiological mechanisms.
The required level of severity for these disorders is met when the requirements in both A
and B are satisfied.
A. Medically documented by evidence of one of the following:
1. A history of multiple physical symptoms of several years duration, beginning before
age
30, that have caused the individual to take medicine frequently, see a physician often and
alter life patterns significantly; or
2. Persistent nonorganic disturbance of one of the following:
a. Vision; or
b. Speech; or
c. Hearing; or
d. Use of a limb; or
e. Movement and its control (e.g., coordination disturbance, psychogenic seizures,
akinesia,
dyskinesia), or
f. Sensation (e.g., diminished or heightened).
3. Unrealistic interpretation of physical signs or sensations associated with the
preoccupation
or belief that one has a serious disease or injury;

AND

10

B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence or pace; or
4. Repeated episodes of decompensation each of extended duration.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.07.

The Part A criteria of the listing establish the existence of a mental impairment, not severity. The Part B criteria assess the severity of the mental impairment in functional terms. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A.

The ALJ agreed that Plaintiff had a diagnosis of a conversion disorder. Nevertheless, the ALJ did not find that Plaintiff's conversion disorder met the severity requirements to demonstrate that her impairment met or equaled the requirements for any listing, including Listing § 12.07. The ALJ found that for the "B" criteria, Plaintiff had no difficulty in tending to her activities of daily living or in maintaining appropriate social functioning. She had only moderate limitations in sustaining concentration, persistence, and pace, and there was no evidence of episodes of decompensation. The evidence supports the ALJ's findings.

The ALJ found that Plaintiff's activities did not demonstrate a disabling impairment. Plaintiff testified that she had been to the mall four or five times since October 2001, visited with family, went to the park with her cousin, and attended church. R. at 544-45, 559, 566. She reported to Dr. Kennon in September 2003 that her daily activities included washing dishes, laundry, cooking, vacuuming, and attending church. R. at 490. She also reported that she reads, shops, and spends time with friends. R. at 490, 504.

As for social functioning, Plaintiff told Dr. Kennon that she had no significant problems in her ability to relate to coworkers or supervisory personnel during her employment.  R. at 490. Plaintiff reported to the Pathways clinician that she had social support from her friends and family.  R. at 503.  Dr. Blair found that Plaintiff's memory, concentration, and attention were adequate. He found that Plaintiff demonstrated adequate recall of both recent and remote events, while displaying a relevant and organized train of thought.  R. at 416, 421. Dr. Blair also noted that Plaintiff's performance on neurocognitive evaluations was adequate, reflecting sufficient simple and complex auditory attention.  R. at 413. Plaintiff was able to follow three-step verbal and one-step written commands.  R. at 416.

Although Plaintiff is correct that the Sixth Circuit has held that a psychosomatic overlay, such as Plaintiff's conversion disorder, is not the equivalent of an imaginary complaint, see Miracle v. Celebrezze, 351 F.2d 361, 376-77 (6th Cir. 1965), substantial evidence supports the ALJ's findings that Plaintiff's impairments did not meet or equal the requirements of the "B" criteria of Listing § 12.07. While Ms. Hasselle and Dr. Gordon found that Plaintiff was unable to return to work at that time, the ALJ did not give these opinions significant weight. The ALJ noted that Ms. Hasselle was not a medical doctor, nor a vocational expert, and thus, that her opinion was not entitled to significant weight. The Commissioner does not acknowledge nurse practitioners as acceptable medical sources, 20 C.F.R. § 404.1513, and their opinions are, therefore, accorded less weight than those of medical doctors.  In her January 2003 medical source statement, Dr. Gordon found that Plaintiff had a fair to poor ability to use judgment with the public, function independently,

and maintain attention and concentration.  R. at 232. However, on June 3, 2003, Dr. Gordon

noted that Plaintiff's thought content, perception, insight and judgment were within normal

limits.  R. at 239.  It was within the province of the ALJ to give more weight to the later

report of Dr. Gordon.

In addition, Dr. Blair found that Plaintiff demonstrated adequate recall of both recent

and remote events, while displaying a relevant and organized train of thought.  R. at 416,

421. Dr. Blair noted that Plaintiff's performance on neurocognitive evaluations was adequate,

reflecting sufficient simple and complex auditory attention.  R. at 413.

No doctor opined that Plaintiff's impairments met or equaled a listed impairment,

including Dr. Gordon or Ms. Hasselle. The state agency physicians determined that

Plaintiff's impairments did not meet or equal the requirements of any listing.  R. at 222, 229.

See SSR 96-6p (The signature of a State agency medical or psychological consultant on a

Disability Determination and Transmittal Form, ensures that consideration by a physician

designated by the Commissioner has been given to the question of medical equivalence at

the initial and reconsideration levels of administrative review.) Thus, the evidence in the

record does not indicate that Plaintiff's impairment met or equaled the requirement of any

listed impairment

As for the ALJ's determination that Plaintiff's testimony was less than fully credible,

a claimant's testimony, taken alone, will not establish that she is disabled; instead, there must

be objective medical findings which show the existence of a medical impairment that could

reasonably be expected to give rise to the subjective complaints alleged.   C.F.R.

13

§ 404.1529(a).  Duncan v. Secretary of Health & Human Servs., 801 F.2d 847  (6th Cir. 1986), established a two-part test for determining whether a claimant suffers from disabling pain.  First, the court must determine whether objective medical evidence of an underlying medical condition exists.  If it does, then the court must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." Id. at 853.  The ALJ's opportunity to observe the demeanor of the plaintiff is invaluable and should not be lightly disregarded. Villarreal v. Secretary of Health & Human Servs., 818 F.2d 461,463 (6th Cir. 1987).

Here, the ALJ evaluated Plaintiff's subjective complaints and cited to specific evidence to support his decision that Plaintiff was not disabled as opposed to discounting Plaintiff's complaints solely because the medical evidence did not support them.  See Saddler v. Commissioner, 1999 WL 137621 (6th Cir.) ( "[T]he ALJ determined that '[t]he claimant's descriptions of the severity of her symptoms, pain, and limitations are not credible under the criteria of Social Security Ruling 88-13 and 20 C.F.R. 416.929.' The ALJ explained the reasons for this determination, discussing the specific content of the medical evidence as well as Ms. Saddler's own testimony.  His explanation is supported by the evidence, and we may not second-guess him." (some citations omitted)).  See also Walters v. Commissioner, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate

where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.")

Plaintiff testified at the administrative hearing that she had problems with chronic pain and numbness in her left side, which caused her to fall.  R. at 562. She also testified that she was unable to stand or walk without a walker.  R. at 562. Plaintiff said that she could not perform a sit-down job due to her low comprehension level.  R. at 567.  She stated that she could not handle her own money and was unable to use public transportation.  R. at 557-58. Plaintiff testified that she had been to the mall four or five times since October 2001, visited with family, went to the park with her cousin, and attended church.  R. at 544-45, 559, 566.

Plaintiff's mother also testified.  She said that Plaintiff "wobbled and fell every day" and could not prepare her own food.  R. at 570. She testified that Plaintiff did laundry and that Plaintiff occasionally went to the mall and tried on shoes.  R. at 568, 577.

Plaintiff argues that the record is devoid of a finding that she was less than credible, and therefore, the ALJ's decision should be reversed.  This argument is without merit.  In his decision, the ALJ considered the entire record, including Plaintiff's testimony, activities, objective and opinion evidence, activities of daily living, and inconsistencies between her claims and the evidence of record as a whole, and found that Plaintiff's subjective allegations regarding the extent of her limitations were not entirely credible.  R. 17-26.[4] An ALJ's

---

4   When evaluating a claimant's subjective complaints an ALJ must consider, in addition to objective medical evidence and Plaintiff's work record, any evidence relating to Plaintiff's daily activities; duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. See 20 C.F.R. §§ 404.1529, 416.929.

credibility finding should be accorded great weight and deference. See Walters, 127 F.3d at 531.

The ALJ noted inconsistencies in Plaintiff's and her mother's testimony and the medical evidence. For example, Plaintiff testified that she could not perform a sit-down job because her comprehension level was very low. R. at 567. She said she could not even handle her own money. R. at 557. However, both Drs. Blair and Kennon found that Plaintiff was capable of managing her own funds. R. at 416-17, 491. Dr. Blair specifically found that, while Plaintiff asserted that she could not retain anything, Plaintiff demonstrated adequate recall of both recent and remote events, while displaying a relevant and organized train of thought. R. at 416, 421. Plaintiff's performance on neurocognitive evaluations was adequate, reflecting sufficient simple and complex auditory attention. R. at 413. Plaintiff was able to follow three-step verbal and one-step written commands. R. at 416. Plaintiff also stated that she was unable to use public transportation; however, Dr. Kennon reported that Plaintiff was able to travel independently and use public transportation. R. at 498, 558.

The ALJ noted that Plaintiff testified that she had problems with chronic pain and numbness in her left side, which caused her to fall. R. at 562. She testified that she was unable to stand or walk without a walker. R. at 562. However, Plaintiff reported to Dr. Curwen in April 2003 that she did not always need to use the walker. R. at 448. Additionally, although Plaintiff testified that she has migraines two to three times per week, R. at 551, medical records indicate that Plaintiff has migraine headaches less than once a

month.  R. at 188. Inconsistencies in the record can demonstrate that a claimant is not credible. See Blacha v. Secretary, 927 F.2d 228, 231 (6th Cir. 1990).

The ALJ noted that while there was evidence of severe impairments, all clinical and laboratory findings were reported as normal or unremarkable.  R. at 162, 174-75, 182-83, 188-90, 196, 218, 272, 448, 484-86. "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." See Walters, 127 F.3d at 531. This is true even where a somatoform disorder, such as a conversion disorder, is present. See Young v. Secretary, 925 F.2d 146, 151 (6th Cir. 1990).

The ALJ found that Plaintiff's reported activities were inconsistent with her complaints of disability.  Plaintiff testified that she had been to the mall four or five times since October 2001, visited with family, went to the park with her cousin, and attended church.   R. at 544-45, 559, 566. She reported to Dr. Kennon, in September 2003, that her daily activities included washing dishes, laundry, cooking, vacuuming with a hand-held vacuum, and attending church. R. at 490. She also reported that she reads, shops, and spends times with friends.  R. at 490, 504. An ALJ may consider household and social activities in evaluating Plaintiff's subjective complaints. See Blacha, 927 F.2d at 231.

It is the province of the Commissioner to weigh the evidence and to make credibility determinations and resolve material conflicts in the testimony. See Walters v. Commissioner, 127 F.3d 525 (6th Cir. 1997). The ALJ specifically stated why he did not find Plaintiff's complaints of disability wholly credible, and substantial evidence supports the ALJ's

17

findings.  If an ALJ makes explicit credibility findings and gives good reasons for such a finding, the court should defer to the ALJ's opinion. The ALJ's conclusions with respect to credibility should not be discarded lightly and should be accorded deference. See Casey v. Secretary, 987 F.2d 1230, 1234 (6th Cir. 1993).  Based on the evidence in the record, the ALJ properly discounted Plaintiff's subjective complaints.  See Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990) ("[T]he ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other.")

In conclusion, there is substantial evidence in the record to support the Commissioner's determination that Plaintiff was not disabled.  Plaintiff failed to sustain her burden of proving that she was unable to return to her past relevant work either as she performed that work or as that work is generally performed in the national economy. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); see also Smith v. Secretary, 893 F.2d 106, 108 (6th Cir. 1989). Because there is substantial evidence in the record supporting the Commissioner's decision denying Plaintiff's application for benefits, the decision of the Commissioner is AFFIRMED.  The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

 S/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE